# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSIYAH MENO,<br><br>    Defendants. | Case No. 2:11-cr-00368-JCM-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mtn for Hearing - Dkt. #71) |

The government's Unopposed Motion for a Status Conference (Dkt. #64) was referred to the undersigned by the assigned district judge, James C. Mahan, pursuant to 28 U.S.C. § 636(b)(1)(A), and Local Rule IB 1-4. The court set the unopposed motion for hearing Tuesday, September 24, 2013. Christina Silva appeared on behalf of the government, and Ozzie Fumo appeared on behalf of Meno, who was present and in custody. The day before the hearing, the court entered an Order to Show Cause (Dkt. #67) requiring the parties to brief the subject matter addressed in the unopposed motion. The court has now reviewed the government's Response (Dkt. #70) to the Order to Show Cause, and Meno's Response entitled a Motion for Hearing Pursuant fo 18 U.S.C. § 4246 (Dkt. #71). The court will issue a Report of Findings and Recommendation rather than an order because the scope of a magistrate judge's authority on the issues before the court is unclear.

## BACKGROUND

On October 11, 2011, the grand jury returned an Indictment (Dkt. #1) against Defendant Josiyah Meno, charging him with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Meno made an initial appearance on October 11, 2011, was arraigned and pled not guilty to the charge in the Indictment. *See* Minutes of Proceedings (Dkt. #10). Following a detention hearing, Meno was detained pending trial. *Id.*; Order of Detention (Dkt. #14). In an Order (Dkt. #25) entered

February 23, 2012, the court granted the government's unopposed Motion for Psychiatric or Psychological Evaluation (Dkt. #24). In that Order, the undersigned directed the U.S. Marshals Service ("USMS") to transport Meno to a suitable facility for a psychiatric examination to determine if he was suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and consequences of the proceedings against him or to assist properly in his defense pursuant to 18 U.S.C. §§ 4241(b). The order also required an evaluation of whether Meno was insane at the time of the offense pursuant to 18 U.S.C. § 4242 and 4247.

Meno was transported to the Metropolitan Detention Center in Los Angeles, California, where a psychiatric examination was conducted. A forensic evaluation report addressing the issue of competency to stand trial was submitted to the court and counsel. Meno's mental state at the time of the offense was addressed in a separate accompanying addendum.

Meno appeared in court for a competency hearing on July 19, 2012. *See* Minutes of Proceedings (Dkt. #41). Counsel for both sides agreed, based on the forensic evaluation report, that Meno was incompetent to stand trial because he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Counsel for the government, Andrew Duncan, requested that Meno be committed to a Federal Medical Center for evaluation and treatment for restoration to competency pursuant to 18 U.S.C. § 4241(d) as recommended in the forensic evaluation report. Counsel for Meno, Osvaldo Fumo, concurred that Meno was unable to understand the nature and consequences of the court proceedings against him and was unable to assist in his defense. Additionally, Mr. Fumo agreed Meno needed treatment to restore him to competency. The court found by a preponderance of the evidence that Meno was presently suffering from a mental disease or defect rendering him incompetent to the extent he was unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. The court therefore ordered that Meno be committed to the custody of the Attorney General pursuant to the provisions of 18 U.S.C. § 4241(d). The government did not request, and the court did not order, an evaluation regarding whether Meno was a danger to others or property at the competency hearing.

A written Order (Dkt. #46) was entered August 1, 2012, committing Meno to the custody of the Attorney General for hospitalization for treatment in a suitable facility for a reasonable period of time,

not to exceed four months, to determine whether there was a substantial probability that Mr. Meno could be restored to competency in the foreseeable future pursuant to 18 U.S.C. § 4241(d). Meno was transported to the Federal Medical Center in Butner, North Carolina, ("FMC-Butner") pursuant to that Order.

On February 14, 2013, the court received a report stating that the facility had completed Meno's forensic study. The warden of the facility sent a cover letter indicating that the report and letter had also been sent to counsel for the government and counsel for Meno. A staff psychologist, staff psychiatrist, and staff neurologist authored the report and opined that Meno was suffering from a mental disease or defect that rendered him mentally incompetent to the extent he could not understand the nature and consequences of these proceedings and could not assist in his defense. The examiners also opined that there was not a substantial probability that Meno could be restored to competency in the foreseeable future. The cover letter from the warden at FMC-Butner indicated that if the court agreed with these opinions and documented that finding in a court order, that Meno would be subject to the provisions of 18 U.S.C. § 4246, and that risk assessments pursuant to § 4246 are performed at Federal Medical Centers. *See* Sealed Forensic Report (Dkt. #54) at 2. The letter indicated that the United States Marshals Service ("USMS") would be notified of the completion of Mr. Meno's forensic study and the need to transport him to this district for further legal proceedings. The USMS was notified, and Meno was transported to this district for further judicial proceedings.

On March 28, 2013, the court set the matter for hearing to determine how counsel proposed to proceed in this case. Andrew Duncan appeared on behalf of the government. Meno was present with his counsel, Mr. Fumo. The government orally requested Meno be subject to another psychiatric or psychological examination by the Bureau of Prisons to determine if his release would create a substantial risk of bodily injury to another person or serious damage to another's property pursuant to 18 U.S.C. §§ 4246 and 4247. Counsel for Meno did not object to the request for a dangerousness evaluation but did object to transferring Meno back to FMC-Butner. He requested the evaluation be conducted locally, where Meno resides and where he has family support.

The court granted the government's oral request to have Meno examined, but denied its request that the Bureau of Prisons conduct the evaluation. The court reviewed the provisions of 18 U.S.C.

1  § 4247(b) and granted Meno's request that the psychiatric examination be conducted by a licensed
2  certified psychiatrist in this district for the reasons stated in the court's April 5, 2013, written Order
3  (Dkt. #57). The order directed that Meno be evaluated for purposes of 18 U.S.C. § 4246(a) by a local
4  board certified psychiatrist for a determination of whether Meno's release would create a substantial
5  risk of bodily injury to another person or serious damage to property of another. Counsel for the parties
6  conferred and stipulated to use Dr. Dodge Slagle, the psychiatrist who originally evaluated Meno's
7  competency to stand trial in December 2011.

8  Dr. Slagle evaluated Meno on April 19, 2013, at the Southern Nevada Detention Center in
9  Pahrump, Nevada. A written psychiatric evaluation was prepared but not provided to the court until it
10 was attached to the August 29, 2013, unopposed Motion for a Status Conference.[1] Dr. Slagle concluded
11 that future long-term dangerousness cannot be predicted with medical certainty, and while there is a
12 potential future risk of danger to others or property, it is not high. Dr. Slagle opined that Meno's mental
13 and physical condition have changed since his brain injury in a way that has substantially reduced his
14 risk of violence.

15 On April 30, 2013, counsel stipulated to continue the May 1, 2013, calendar call and May 6,
16 2013, trial, indicating they were awaiting Dr. Slagle's evaluation. *See* Stipulation (Dkt. #59). The
17 district judge approved the parties' Stipulation and continued the trial until August 19, 2013. *See* Order
18 (Dkt. #60). On August 16, 2013, counsel again stipulated to continue the August 19, 2013, trial date,
19 stating, "It is clear from the record that Mr. Meno is not competent to stand trial. Counsel for the
20 government feels that clarification from Dr. Dodge Slagle regarding whether the Defendant is a danger
21 to himself, others or property [sic]." *See* Stipulation (Dkt. #62). The district judge approved the
22 parties' Stipulation and continued the trial to October 7, 2013. *See* Order (Dkt. #65).

23 On July 16, 2013, Dr. Slagle drafted an addendum to his original report opining that although
24 future human behavior can never be predicted with absolute certainty, it was his professional opinion to
25 a reasonable degree of medical probability that Meno was not a danger to himself, others, or property
26 for reasons summarized in his prior report. The letter addendum was forwarded to counsel for Meno on

---

[1]The report is not dated, and it is not clear exactly when counsel received it.

1 July 18, 2013. *See* facsimile transmittal sheet and addendum, attached to unopposed Motion for Status Conference as Exhibit E. Given the date of the facsimile transmittal, the court was at a loss to understand how the parties could stipulate to a continuance of the August 19, 2013, trial date on the grounds they were awaiting clarification of Dr. Slagle's initial report. At a September 24, 2013, hearing counsel for Meno represented that he did not receive the report until after the parties stipulated to continue the August 19, 2013, trial. Dr. Slagle's office was contacted and indicated the report had been sent in July. However, Mr. Fumo had not received it and therefore requested another copy.

After counsel received Dr. Slagle's addendum, the government filed the Unopposed Motion for a Status Conference on August 29, 2013. In the unopposed motion, the government did not request any form of relief from this court. Similarly, Meno did not request any specific form of relief from this court. Rather, counsel for both sides requested a status hearing "to review these issues with the court," essentially asking that the court figure it out. The motion indicated "Defendant continues to seek dismissal of the case." However, the government was concerned for the safety of the community based on Dr. Slagle's opinion to a reasonable degree of medical probability. In the unopposed motion, counsel for the government acknowledged that if the case was dismissed, the court could order treatment for Meno, but "the type and frequency of the treatment program are unclear from Dr. Slagle's report and letter."

The court set the matter for hearing on September 24, 2013, as requested. In preparing for the hearing, it did not appear from the court's initial research that Meno was subject to the provisions of 18 U.S.C. § 4246 because the director at FMC-Butner had not certified that Meno was presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person, or serious damage to the property of another. *See* § 4246(a). Additionally, it did not appear from the court's preliminary research that the other three circumstances described in § 4246(a) applied to Meno. Therefore, on September 23, 2013, the court entered an Order to Show Cause (Dkt. #67) referring the parties to the Ninth Circuit's decision in *United States v. Godinez-Ortiz*, 563 F.3d 1022 (9th Cir. 2009), and directing the parties to show cause why the Indictment (Dkt. #1) should not be dismissed and Meno released from federal custody.

///

At the September 24, 2013, status conference, Cristina Silva appeared on behalf of the government, and Ozzie Fumo appeared on behalf of Meno who was present and in custody. *See* Minutes of Proceeding (Dkt. #69). The court addressed the parties' failure to request any form of relief from this court and gave counsel until the end of the week to file a written response to the order to show cause why the procedure outlined by the Ninth Circuit in *Godinez-Ortiz* should not be ordered. At the hearing, counsel for Meno made an oral motion to release Meno from custody, which the court denied.

## DISCUSSION

### I.     The Parties' Positions.

The government response to the order to show cause maintains that the Insanity Defense Reform Act of 1984, codified at 18 U.S.C. § 4241-47, "is imprecise regarding exactly what procedure the Court should follow" in Meno's circumstances. However, it is the government's position that the Indictment should not be dismissed. Rather, the court should order Meno returned to the Bureau of Prisons for a dangerousness evaluation under 18 U.S.C. § 4246(a). The government's response to the order to show cause appears to argue that Meno is a person committed to the custody of the Attorney General pursuant to § 4241(d) which gives this court jurisdiction to order the dangerousness evaluation.

The government asserts that the Director at FMC-Butner did not file a certificate of dangerousness because the court did not direct a dangerousness evaluation be conducted by a Bureau of Prisons ("BOP") facility. The government is unwilling to dismiss the Indictment against Meno without a BOP determination of whether or not Meno's release would create a substantial risk of bodily injury to another person or serious damage to property of another. Without such a determination, the government argues, it cannot make a recommendation regarding disposition of this case as outlined in 18 U.S.C. § 4246(d) and (e). The government's response to the order to show cause does not address the Ninth Circuit's decision in *Godinez-Ortiz*. However, the government asks that the court not dismiss the Indictment.

The government acknowledges that this is an old case and that the calendar call and trial date are fast approaching. However, the government argues that because Meno has been determined incompetent to stand trial and requires a further evaluation under 18 U.S.C. § 4246(a), further delay of these proceedings is excludable time under 18 U.S.C. §§ 3161(h)(1)(A) and (F) of the Speedy Trial Act.

1    The government therefore requests that the court order Meno into the custody of the Attorney General
2    for an evaluation under 18 U.S.C. § 4246(a) to determine if Meno's release would create a substantial
3    risk of bodily injury to another person or serious damage to property of another.  The government
4    requests that the court order Meno returned to FMC-Butner for a period not to exceed forty-five days, to
5    give the facility director the opportunity to file a dangerousness certificate pursuant to 18 U.S.C.
6    § 4246, and commence federal civil commitment proceedings.

7         Meno's response to the order to show cause argues the court should conduct a hearing pursuant
8    to 18 U.S.C. § 4246(c).  Counsel for Meno asserts that at the March 28, 2013, hearing following
9    Meno's return from FMC-Butner, the government indicated it intended to dismiss the indictment.
10   However, the government requested an evaluation under 18 U.S.C. §§ 4246 and 4247 to determine
11   whether Meno's release would create a substantial risk of bodily injury to another person or serious
12   damage to another property.  Counsel for Meno maintains that because the government expressed an
13   intention to dismiss the Indictment, he agreed to such an evaluation.  That evaluation was conducted
14   locally by Dr. Slagle who has now completed his evaluation and concluded that future long-term
15   dangerousness cannot be predicted with medical certainty, and while there is always a potential future
16   risk of danger to others or property the risk, is not high.  Dr. Slagle also opined that Meno's brain injury
17   has caused mental and physical limitations that substantially reduce his risk of violence.

18        Counsel for Meno indicates that he did not file a motion to dismiss because he believed the
19   government would move to dismiss once a dangerousness evaluation was completed.  The
20   dangerousness evaluation has now been done by Dr. Slagle.  The director at FMC-Butner had Meno
21   transferred back to this district for further judicial proceedings after determining Meno was not likely to
22   be restored to competency within the foreseeable future, but did not file a certificate under § 4246(a)
23   which would trigger civil commitment proceedings.

24        Meno argues that § 4246(a) authorizes, but does not require, the director of FMC-Butner to file
25   a certification regarding whether Meno represents a substantial risk of bodily injury to another person or
26   serious damage to property of another.  Meno maintains that the plain language of § 4246(a) makes it
27   clear that although a certificate may be filed, it is not a condition precedent to conducting a hearing
28   under 18 U.S.C. § 4246(d).  Rather, 18 U.S.C. 4246(b) allows for a psychiatric or psychological

examination to assist the court in determining whether there is clear and convincing evidence Meno represents a substantial risk of bodily injury to another person or serious damage to property of another. The court's April 5, 2012, order directed Dr. Slagle to conduct an examination in accordance with the requirements of 18 U.S.C. §§ 4241, 4246, 4247, and 4248. The examination that Dr. Slagle conducted was the risk assessment.

Meno acknowledges that the Ninth Circuit's decision in *Godinez-Ortiz* allows the district judge to recommit the defendant to the custody of the Attorney General for a dangerousness evaluation. However, Meno reads the decision to suggest that "the opposite is true as well," that is, nothing requires this court to recommit a defendant in Meno's position to the custody of the Attorney General for a dangerousness evaluation. Thus, the court has the authority to conduct a dangerousness hearing under § 4246(d). Meno asks the court to conduct such a hearing to determine whether there is clear and convincing evidence that Meno is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.

Meno also argues that the director of FMC-Butner returned Meno to this district without a certificate that he was a danger. Thus, it is counsel's position that "the certificate complies with the requirement of § 4246 and a hearing to determine danger can be held pursuant to § 4246(c)." He argues, in the alternative, that "the provisions of § 4246(a) are not required because the Government refuses to dismiss the Indictment."

In short, Meno argues that the court should conduct a hearing under 18 U.S.C. § 4246(c) and make a determination whether there is clear and convincing evidence Meno represents a substantial risk of bodily injury to another person or serious damage to property of another. Citing *United States v. Sahhar*, 917 F.2d 1197, 1205 (9th Cir. 1990), Meno argues that if the court finds Meno does not represent a substantial risk of danger, he is entitled to be released. Counsel for Meno agrees after reviewing unspecified "applicable case law" that it does not appear the court can require that the Indictment be dismissed. Therefore, he is simply asking to be released with or without conditions. If the court finds clear and convincing evidence he represents a substantial risk, then the court may commit him to the custody of the Attorney General pursuant to 18 U.S.C. §§ 4246(d)(1) and (2). If

Meno is committed to the custody of the Attorney General because he represents a risk, the Attorney General will then release him to the state to assume custody and treatment.

## II.     Applicable Law.

The parties have agreed, and the court has found, that Meno is incompetent to stand trial. The parties have also agreed, and the court has found, that Meno is unlikely to be restored to competency within the foreseeable future. The due process clause of the Fifth Amendment prohibits trying a defendant who is mentally incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

The treatment of offenders suffering from a mental disease or defect is governed by the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241-48. The federal criminal code establishes a multi-part statutory scheme for addressing offenders suffering from a mental disease or defect who have pending federal charges. If a question is raised concerning whether a defendant is competent to stand trial or assist in his defense, the court first determines whether the defendant suffers from a "mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense." 18 U.S.C. § 4241(a) and (d); *see also United States v. Friedman*, 366 F.3d 975, 978 (9th Cir. 2004). Section 4241(a) provides that whenever the court has reasonable cause to believe a defendant is suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall conduct a hearing to determine the defendant's competency.

Second, if the court finds that a defendant is mentally incompetent to understand the nature and consequences of the proceedings against him, or to assist properly in his defense, the statute requires that the court commit the defendant to the custody of the Attorney General. 18 U.S.C. § 4241(d). In such circumstances, the Attorney General is required to hospitalize the defendant for treatment for a reasonable period of time, not to exceed four months, necessary to determine whether there is a substantial probability that the defendant will become competent to stand trial within the foreseeable future. 18 U.S.C. § 4241(d)(1); *see also United States v. Loughner*, 672 F.3d 731, 766 (9th Cir. 2012). If the court finds by a preponderance of the evidence that the defendant is incompetent, it shall commit

him to the custody of the Attorney General for treatment. 18 U.S.C. § 4241(d). The defendant may be hospitalized for a reasonable time, not to exceed four months, "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d)(1).

Third, if the determination is made after the statutory period that it is not possible to restore the defendant to competency within the foreseeable future, the defendant is subject to the provisions of §§ 4246 and 4248[2]. If, at the end of this period, the court determines that defendant's mental condition has not improved sufficiently for trial to proceed, the defendant becomes subject to the provisions of § 4246. 18 U.S.C. § 4241(d).

Meno was found incompetent to stand trial and was committed to the custody of the Attorney General to determine whether he could be restored to competency within the foreseeable future. He was returned to this district after the evaluators at FMC-Butner determined he could not be restored to competency within the foreseeable future. Counsel for Meno and the government agree that Meno is incompetent to stand trial and is unlikely to be restored to competency in the foreseeable future, and the court has so found. It is black letter constitutional law that the due process clause of the United States Constitution precludes Meno from being tried or convicted. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Bishop v. United States,* 350 U.S. 961 (1956).

Where, as here, a defendant has been found incompetent to stand trial and not likely to be restored to competency within the foreseeable future, the Insanity Defense Reform Act authorizes the court to order an evaluation under § 4246(a) to determine whether a defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a).

In this case, Meno has been found incompetent to stand trial, and unlikely to be restored to sanity within the foreseeable future. Both sides agree that pursuant to § 4241(d)(2)(B) where, as here, Meno's mental condition has not so improved that trial may proceed, and the court has found there is no

---

[2]Section 4248 involves civil commitment of sexually dangerous persons and does not apply to this case.

substantial probability that he will be restored to sanity in the foreseeable future, § 4246 applies to Meno's situation.

The fourth step of the federal statutory scheme addressing offenders with mental diseases or defects contemplates a determination by the director of an FMC facility about whether the defendant's release would create a substantial risk of bodily injury to another person, or serious damage to property of another.  If a defendant has been found incompetent to stand trial, and not capable of being restored to competency within the foreseeable future, § 4246(a) authorizes the court to transport the defendant to be returned to an FMC facility to determine whether the defendant would pose a "substantial risk of bodily injury to another person or serious damage to property of another" if released.  18 U.S.C. § 4241(d)(1); *see also United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009).  The statute also requires the director to determine whether suitable arrangements for state custody and care are available.

If the director files a certificate that the defendant is a substantial risk of bodily injury to another or serious damage to property, the court is required to hold a hearing to determine whether the person is, in fact, dangerous as alleged.  18 U.S.C. § 4246(a).  If the court determines the person is dangerous as alleged, the person may be civilly committed even though he has not been tried or convicted of a criminal offense.  "Section 4246 allows for continued hospitalization for federal inmates due for release but previously committed for treatment of mental disease or defect."  *Weber v. United States District Court*, 9 F.3d 76, 78 (9th Cir. 1993).

The civil commitment procedure outlined in § 4246 applies to three categories of hospitalized individuals:

    (1)    those whose sentence is about to expire;

    (2)    those who are committed for restoration of mental competency to stand trial under 18 U.S.C. § 4241(d); and

    (3)    those whose criminal charges have been dismissed solely based on their mental condition.

18 U.S.C § 4246(a); *Weber*, 9 F.3d at 78.

/ / /

In *Weber*, the Ninth Circuit found that the district court lacks authority to initiate a hearing to determine dangerousness without a certificate from the director of the facility. *Id*. at 79. The Ninth Circuit stated that § 4246 requires "that the director of the facility is to make the initial determination regarding the dangerousness issue." *Id*.

In this case, the director as FMC-Butner has not filed such a certificate or opined that Meno is a danger. Rather, FMC-Butner completed the four-month evaluation to determine whether Meno could be restored to competency in the foreseeable future and notified the court and counsel for both sides that Mr. Meno was subject to the provisions of § 4246. The cover letter which accompanied the forensic evaluation report advised the court and counsel for both sides that if the court agreed with the evaluators' opinion that Meno was not likely to be restored to competency within the foreseeable future, and documented that finding in a court order, that FMC-Butner would conduct the risk assessment pursuant to § 4246.

In retrospect, the most efficient, cost-effective, and time-saving approach would have been for the parties to stipulate, and the court to order, that the director of FMC-Butner conduct a dangerous evaluation required by § 4246(a) without returning Meno to this district for a formal hearing to make findings that Meno was unlikely to be restored to competency within the foreseeable future. The court does not fault counsel for failing to arrive at this conclusion. Section 4246 lacks clarity and direction concerning what procedure a district court must follow after a defendant has completed his four-month period of hospitalization under § 4241(d) if: (a) the facility where the defendant was hospitalized determines that there is not a substantial probability that in the foreseeable future, defendant will be restored to competency; and (b) the director of that facility has not filed a certificate pursuant to § 4246(a) stating the defendant is presently suffering from a mental disease or defect the result of which would create a substantial risk of bodily injury to another person or serious damage to another person's property. The risk assessment was not done because the director at FMC-Butner did not have a court order directing it or a judicial determination that Meno was not likely to be restored to competency in the foreseeable future.

When Meno was returned to this district, this court granted Meno's request to have a local licensed psychiatrist conduct a dangerousness evaluation. The court granted this request pursuant to

§ 4247(b) which provides:

> **Psychiatric or psychological examination.** A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under §§ 4245, 4246, or 4248, upon the request of the defendant, an additional examiner may be selected by the defendant.

*Id.*

The authority to order an examination by a local, licensed, certified psychiatrist upon the defendant's request does not, however, eliminate the statutory requirement that a dangerousness assessment be conducted by the director of an FMC facility. The court expected that counsel for the government would follow the procedure approved by the Ninth Circuit in *Godinez-Ortiz* and move to dismiss the pending criminal charge against Meno to trigger the § 4246(a) process. If the charges against Meno are dismissed, he qualifies for a 4246(a) dangerousness evaluation at an FMC as a person whose criminal charges have been dismissed solely for reasons related to his mental condition. Instead, the government has asked that the defendant be sent back to FMC-Butner for the dangerous evaluation while leaving the charges pending.

The court will recommend that the procedure approved by the Ninth Circuit in *Godinez-Ortiz* be followed in this case. Specifically, the court recommends: (1) that the Indictment against Meno be dismissed; (2) that Meno be returned to FMC-Butner or other FMC to provide the facility director with the opportunity to re-evaluate him and issue a dangerousness certificate pursuant to 18 U.S.C. § 4246 if appropriate; and (3) that the district court stay its dismissal order until after the risk assessment has been made. Like Meno, Godinez-Ortiz was found incompetent to stand trial and committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for hospitalization and treatment for a period not to exceed four months to determine whether there was a substantial probability that he could be restored to sanity within the foreseeable future. Like Meno, Godinez-Ortiz was returned to the charging district after the evaluators at FMC-Butner opined there was no substantial probability that he could be restored to competency in the foreseeable future. The government moved to dismiss the charges against Godinez-Ortiz and also moved that he be returned to FMC-Butner to provide the facility director with

///

the opportunity to re-evaluate him and issue a dangerousness certificate pursuant to 18 U.S.C. § 4246, if appropriate.[3]

On a mandamus petition to the Ninth Circuit, Godinez-Ortiz argued that the district court lacked authority to commit him and commence a § 4246(a) dangerousness evaluation because: (1) the director had not filed a certificate with the clerk of the court in the district where he was confined; (2) he was not hospitalized at FMC-Butner at the time; and (3) the dangerousness evaluation had already occurred. The Ninth Circuit rejected all of these arguments. It held that a district court where the criminal case is pending had authority to recommit a defendant to the custody of the Attorney General for a dangerousness evaluation. The Ninth Circuit held that § 4246 did not require that the director's certificate be filed during the person's commitment under § 4241 or before the § 4241(d) evaluation period ends. 563 F.3d at 1031-32. ("Nowhere does § 4246 state that the director's certificate must be filed during the person's commitment under § 4241 or before the § 4241(d) evaluation ends"). The Ninth Circuit also held that the fact that Godinez-Ortiz was no longer hospitalized at FMC-Butner did not deprive the court authority to recommit him for a dangerousness evaluation. The court found that the defendant had only been temporarily transported from FMC-Butner to the district court where the charge was pending for a hearing to determine whether he could be involuntarily medicated to restore competency. *Id.* The district judge found the defendant could not be involuntarily medicated and that there was no substantial probability he would obtain competency in the foreseeable future. *Id.* The Ninth Circuit found that Godinez-Ortiz had not been discharged from FMC-Butner, and he was therefore still in the custody of the Attorney General for hospitalization. *Id.* at 1025, 1031. The court observed that if the district judge had not ordered Godinez-Ortiz returned to FMC-Butner after making

---

[3]*Godinez-Ortiz* involved an additional issue not present here. While Godinez-Ortiz was at FMC-Butner to determine whether he could be restored to competency, officials there determined he was not a danger to himself or others while in the hospital environment, and therefore did not require involuntary medication. The evaluators concluded that Godinez-Ortiz could potentially gain competency with the treatment of anti-psychotic medications, and requested permission from the district court in the charging district to involuntarily medicate Godinez-Ortiz for that purpose. Godinez-Ortiz was returned to the charging district and a hearing held at which the district court concluded that Godinez-Ortiz could not be involuntarily medicated.

the finding he was not likely to be restored to competency in the foreseeable future, that no opportunity for a dangerousness evaluation would have existed. The Ninth Circuit also found that "the fact that he was temporarily in California for the purposes of a hearing rather than at FMC-Butner did not remove him from custody, and did not mean he was no longer subject to § 4246." *Id*. The Ninth Circuit concluded that the district court acted within its authority to temporarily return Godinez-Ortiz to FMC-Butner to provide the director with an opportunity to consider whether to issue a dangerousness certificate pursuant to § 4246.

This case is now two years old. Meno was originally charged in a complaint filed October 6, 2011, and made his initial appearance and arraignment and plea on the Indictment (Dkt. #7) on October 11, 2011. The trial date was initially set for December 5, 2011, and has been continued seven times. The government has never disputed that Meno is incompetent to stand trial or that he is unlikely to be restored to competency within the foreseeable future. Thus, Meno cannot be tried. Both sides agree, and it is clear, that a person in Meno's situation who has been found incompetent and unlikely to be restored to competency in the foreseeable future is subject to the mandatory provisions of § 4246(a). A dangerousness evaluation must be conducted at an FMC facility, and the director of the facility must be given an opportunity to consider whether to issue a dangerousness certificate pursuant to § 4246. The government's response to the court's order to show cause does not address *Godinez-Ortiz* or provide any articulated reasoning why the procedure authorized by *Godinez-Ortiz* should not be ordered here. Accordingly, the court will recommend that the procedure authorized by the Ninth Circuit in *Godinez-Ortiz* be followed in this case.

## **CONCLUSION**

The court has found, and the parties agree, that Meno is incompetent to stand trial and cannot be restored to competency within the foreseeable future. The Ninth Circuit has stated that this court lacks authority to conduct a dangerousness hearing without a certificate from the director of the facility under § 4246(a). *Weber*, 9 F.3d at 78. The director of FMC-Butner was not asked to make a dangerousness evaluation during the period of time Meno was committed for hospitalization to determine whether he could be restored to competency. Under these circumstances, *Godinez-Ortiz* held that a dangerousness

///

evaluation is required, and that this court has the authority to recommit Meno to an FMC facility for this purpose.

For the reasons stated,

**IT IS RECOMMENDED** that**:**

1. Meno's Motion for a [Dangerousness] Hearing (Dkt. #71) be **DENIED**.
2. The Indictment (Dkt. #1) be **DISMISSED** solely for reasons related to Meno's mental condition.
3. The Order dismissing the Indictment be **STAYED** while the facility director at FMC-Butner, or other Federal Medical Center, has the opportunity to conduct a risk assessment of Meno and issue a dangerousness certificate pursuant to 18 U.S.C. § 4246, if appropriate.
4. Meno be returned to FMC-Butner, or other Federal Medical Center, for a period not to exceed forty-five days from the date Meno arrives at the designated medical facility and exclusive of transportation time, for a psychological and/or psychiatric assessment (dangerousness evaluation) under 18 U.S.C. § 4246.
5. The psychiatric and/or psychological report (dangerousness evaluation) be filed with the court pursuant to 18 U.S.C. §§ 4247(b) and (c).
6. Pursuant to 18 U.S.C. § 4247(c)(4)(C), the report shall contain an assessment of whether Meno is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.
7. The report shall be filed with the court with copies provided to counsel for Meno and counsel for the government.

Dated this 4th day of October, 2013.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE